JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
PETER SCHATZBERG, D.C.

### DEFENDANTS
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. and STATE FARM FIRE & CASUALTY COMPANY

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   McLean County, Illinois
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
BARATTA, RUSSELL & BARATTA; (215) 914-2222
3500 Reading Way, Huntingdon Valley, PA 19006

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☒ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
_____
Brief description of cause:
Defamation; False Light Invasion of Privacy

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ EXCESS OF $75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
06/15/2010

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1726 South Broad Street, Philadelphia, PA 19145

Address of Defendant: One State Farm Drive, Concordville, PA 19339

Place of Accident, Incident or Transaction: Philadelphia, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☒ ~~Assault~~, Defamation: False Light Invasion of Privacy
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, ANDREW P. BARATTA , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 6/15/10    APB2    82250

Attorney-at-Law    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/15/10    APB2    82250

Attorney-at-Law    Attorney I.D.#

CIV. 609 (6/08)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| PETER SCHATZBERG, D.C. | : | CIVIL ACTION |
| v. | : | |
| STATE FARM MUTUAL AUTOMOBILE INS. CO. | : | |
| and STATE FARM FIRE & CASUALTY CO. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (XX)

| | | |
|---|---|---|
| June 15, 2010 | Andrew P. Baratta, Esquire | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 914-2222 | (215) 914-2118 | andrew@barattarussell.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER SCHATZBERG, D.C.<br>1726 South Broad Street<br>Philadelphia, PA  19145 | : | CIVIL ACTION |
| | : | |
| | : | |
| Vs. | : | |
| | : | JURY TRIAL DEMANDED |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY | : | |
| And | : | |
| STATE FARM FIRE & CASUALTY COMPANY | : | |
| One State Farm Drive | : | |
| Concordville, PA  19339 | : | NO. |

## COMPLAINT

### JURISDICTION & VENUE

Jurisdiction in this matter is founded upon diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. §1322, in that plaintiff, PETER SCHATZBERG, D.C., is a citizen and resident of the Commonwealth of Pennsylvania, and defendants, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE & CASUALTY COMPANY, are believed and therefore averred to be corporations with their principal place of business located in the State of Illinois; and the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

VENUE is proper in this Court pursuant to 28 U.S.C. §1391(a).

### THE PARTIES

1.   Plaintiff, Peter Schatzberg, D.C. (hereinafter "Dr. Schatzberg"), is a citizen and resident of the Commonwealth of Pennsylvania, with a business address of 1726 S. Broad Street, Philadelphia, Pa.  19145.

2.  Defendant, State Farm Mutual Automobile Insurance Company is upon information and belief a corporation existing under the laws of Illinois, duly organized and licensed to engage in the writing of automobile insurance policies in the Commonwealth of Pennsylvania, with a principle place of business at 1 State Farm Drive, Concordville, Pa. 19339-0001.

3.  Defendant, State Farm Fire and Casualty Company is upon information and belief a corporation existing under the laws of Illinois, duly organized and licensed to engage in the writing of automobile insurance policies in the Commonwealth of Pennsylvania, with a principle place of business at 1 State Farm Drive, Concordville, Pa. 19339-0001.

4.  The State Farm Companies shall be hereinafter referred to as "State Farm," and all references to "State Farm" shall apply equally to both entities.

5.  State Farm provides insurance coverage to its customers for, *inter alia*, medical payments, uninsured motorist benefits, underinsured motorist benefits, and liability payments for bodily injury arising out of automobile accidents.

6.  Dr. Schatzberg is a licensed chiropractor who is the sole owner of a large chiropractic and pain management practice with four locations in Delaware, Philadelphia, and Delaware County.

7.  Many of Dr. Schatzberg's patients have suffered injuries which are related to automobile accidents, the treatment for which is often billed to insurance companies like State Farm under the benefits required to be provided by the Pennsylvania Motor Vehicle Responsibility Law (75 Pa.C.S. §1701, et. seq.).

8.  The vast majority of Dr. Schatzberg's patients are African-American.

9.  Because he has a large practice which is a source of auto claim expense to State Farm Insurance Company, and because his patients are largely African Americans from greater Philadelphia, Dr. Schatzberg's practice has been targeted for destruction by State Farm.

10. State Farm is attempting to eliminate Dr. Schatzberg's practice as a source of auto claim expense by falsely accusing him of having engaged in fraudulent business activity and by creating the false perception in the community that he has engaged in professional impropriety and/or criminal conduct.

11. Spearheading the attack on Dr. Schatzberg is a claims adjuster in State Farm's Special Investigations Unit named Doug Babin.

12. Working closely with and at the direction of Mr. Babin in the attack on Dr. Schatzberg is the law firm of Goldberg, Miller & Rubin, P.C.

13. State Farm has no evidence that Dr. Schatzberg has committed any wrongdoing, and certainly has no evidence that Dr. Schatzberg or his practice has engaged in any fraudulent or other criminal activity.

14. In order to understand why State Farm is attacking Dr. Schatzberg and his practice with false accusations, one must first understand how and why State Farm manufactures vast revenue by doing everything it can to pay less than the full value on every claim it receives.

### THE MCKINSEY/ACE PROGRAM

15. In 1993, State Farm contracted with the global consulting firm McKinsey and Company, Inc. to perform a comprehensive evaluation of State Farm's claims practices.

16. The purpose of the consultation was for McKinsey to advise State Farm how to make more money by reducing expenses associated with auto and fire claims.

17.  McKinsey's recommendations were ultimately very simple, even though they turned traditional principals of insurance claim handling on their head – McKinsey told State Farm to prioritize profit over the interests of its policy holders and claimants.

18.  McKinsey gave State Farm a blueprint for how to pay less than full value on all claims in order to generate huge revenues for the company.

19.  McKinsey sold the same blueprint to other major automobile and property insurers, including Allstate Insurance Company.

20.  From McKinsey's blueprint, State Farm developed its "Advancing Claims Excellence" or "ACE" program.

21.  ACE was a dramatic shift in claim philosophy designed to maximize profit by paying as little as possible in all types of claims, but most significantly in auto related claims, regardless of the claim's true value.

22.  ACE included unique methodology and new terminology, and the processes developed were implemented on a nationwide basis for both Auto and Fire claims.

23.  The potential windfall to State Farm by implementing ACE's methods was staggering. As State Farm Vice-President Jim Rutrough stated in State Farm's 1995 Annual Report, "ACE has the potential of taking a *billion* dollars of cost out of our system every year."

24.  Acting in concert with State Farm claims executives across the country, McKinsey reviewed thousands of both closed and open claim files in order to make findings and recommendations on how State Farm could go about paying less in auto related claims.

25.  McKinsey identified payouts in soft tissue injury claims as the area in which payments could be most greatly reduced and maximum profit realized.

26.     McKinsey expressed to State Farm its opinion that a certain percentage of these claims always involve fraud or exaggeration of some kind, and that in order to reduce the number of such claims and the payouts on them, State Farm should simply identify and attack *all* such claims as fraudulent and/or exaggerated.

27.     In order to profile the vast majority of the claims it receives as fraudulent however, State Farm had to invent an entirely new, and completely bogus, definition of fraud.

28.     State Farm's new definition of fraud manifested itself as a weighted scale of "indicators" which, if present in a claim, allows State Farm to characterize, investigate, and vastly reduce the claim by, at the very least, creating the perception of fraud.

29.     The number one indicator of fraud on State Farm's scale is soft tissue injury.

30.     In other words, any auto accident victim claiming to have suffered a soft tissue injury is automatically characterized by State Farm as potentially fraudulent.

31.     It naturally follows, of course, that any doctor who confirms the existence of soft tissue injuries from an auto accident is also therefore branded potentially fraudulent under State Farm's scheme.

32.     State Farm receives approximately 30,000 auto related injury claims a day, more than 75% of which involve claims for soft tissue injuries.

33.     The vast majority of soft tissue injury claims made to State Farm involve treatment with a chiropractor.

34.     So, not only did State Farm in one fell swoop arbitrarily begin a system of characterizing all soft tissue injury claims as fraudulent, it created a corporate culture which treats the entire chiropractic industry as fraudulent as well.

35.    In addition to soft tissue injuries and chiropractic treatment, another indicator of fraud on
       the State Farm scale is the race or economic status of the claimant.  If a claimant is a
       minority, an immigrant, or from a poor, urban area, State Farm automatically looks on
       their claims as potentially fraudulent.

36.    Under this scheme therefore, a bill for treatment of soft tissue injuries suffered by an
       African-American from a large city sent to State Farm by a chiropractor is considered
       potentially fraudulent before it is even removed from the envelope.

37.    State Farm's ACE program, in essence, manufactured an epidemic of fraudulent claims
       based on arbitrary and racially discriminatory criteria, just to give itself an excuse to
       dramatically cut the amount of money it pays out on claims every year – to the tune of a
       billion dollars annually.

38.    Having in one fell swoop arbitrarily branded the vast majority of the 30,000 auto claims it
       receives daily as potentially fraudulent, State Farm was obviously required to
       significantly beef up its fraud units, also known as Special Investigations Units (or
       "SIU"), in each region of the country.

39.    State Farm's SIU does nothing but investigate fraud.

40.    State Farm came to realize that because the exclusive function of its SIU is so well
       known, aggressive investigations conducted by the SIU, in and of themselves, are
       effective in reducing claims and claim expenses as they deter patients and the attorneys
       who represent them from associating with a provider "under investigation".

41.    Using its bogus scale of "fraud indicators", State Farm therefore created a new workflow
       model whereby a far greater percentage of claims involving soft tissue injuries would be
       funneled to the SIU for a very public and aggressive "investigation."

## IMPLEMENTATION OF ACE IN PENNSYLVANIA

42.   The ACE review of claim files and rollout of the program in Pennsylvania occurred from June of 1998 through February of 1999, and the program's claims handling culture was implemented in Pennsylvania over time thereafter.

43.   Pennsylvania's SIU offices were accordingly expanded during this time period, with several new investigators added, including, but not limited to, Doug Babin, who was transferred to the SIU in 1998.

44.   As part of the ACE initiative in Pennsylvania, the SIU, located in Concordville, began targeting doctors and medical facilities in the Philadelphia area as suspected frauds, all of which providers performed largely chiropractic type treatment on patients claiming soft tissue injuries in auto accidents, and all of which were either staffed by immigrant doctors and/or treated largely minority or immigrant patient populations.

45.   Whenever a doctor or facility was identified as treating such patients, the SIU would issue "SIU Alerts" concerning the facilities.

46.   The SIU alerts were posted on the company's intranet and intended to alert line claim adjusters to transfer to the SIU any claims in which the target facilities were involved.

47.   The issuance of an SIU alert would also serve as an excuse to stop all payments to the provider or facility.

48.   Once transferred to them, SIU adjusters (such as Mr. Babin) collect claim files involving a particular provider and open a larger "project file" concerning the provider.

49.   The "project" for Doug Babin and State Farm in each instance is to brand the targeted provider a fraud and put them out of business, thus eliminating a source of claim expense for State Farm.

50. Unfortunately, because of the enormous success of the ACE philosophy, which brands all chiropractors as frauds, putting providers out of business, regardless of actual wrongdoing, has become the effective goal of State Farm's "investigations".

51. This widened scope of destruction to *all* chiropractic facilities, regardless of wrongdoing, has occurred because State Farm realized early on as it implemented the ACE philosophy that simply creating the perception of wrongdoing by a provider or facility is just as powerful a tool in eliminating the provider as a source of claim expense as is actual proof of wrongdoing.

52. State Farm recognized that the legal and medical communities in the Philadelphia region are relatively insular, that word of an "investigation" by State Farm quickly spreads, and that such word will quickly serve to isolate and destroy the business of the targeted provider or facility, regardless of any actual wrongdoing.

53. State Farm has enjoyed such success in eliminating many *illegitimate* providers, and its "conviction rate" is so high, it knows that the community now sees an investigation by State Farm as evidence of wrongdoing on the part of any targeted provider.

54. State Farm knows that patients and attorneys who represent them will avoid any provider who is "under investigation" by State Farm, and that regardless of wrongdoing, the act of "investigating" a provider will slowly choke the provider's business until it is dead.

55. State Farm exploits this impression by publicizing its investigations through false statements to witnesses associated with the providers, letters to attorneys who represent patients, and the use of Mr. Goldberg's firm.

56. The following is a partial list of the facilities and medical providers which have been targeted by State Farm, Mr. Babin, and Mr. Goldberg, over the course of the past ten

years: Midtown Medical Center, Tabor Chiropractic, Frank Solomon, D.C., Paul Bove, D.C., Metropolitan Family Practice, Edward Kanner, D.C., Efim Itin, M.D., American Rehab and Physical Therapy, New Horizont Medical Center, Uma Kanineni, M.D., Philly Family Practice, Alexander Tarnopolsky, D.O., Advanced Family Medicine, Rennard Healthcare, Arnold Lincow, D.O., Richard Mintz, D.O., 7622 Medical Center, Allied Medical Group, Lawrence Forman, D.O., Stephen Sacks, D.O., Richard Butow, D.C., Stephen Hennessey, D.C., Allied Medical Associates, Robert Cavoto, D.C., Stephen Ficchi, D.O., Frank Shenko, MSPT, Olney Pain Management, Bensalem Pain Management, South Philly Pain Management, George Bonafino, D.O., and Professional Physical Therapy Associates.

57. Upon information and belief, SIU alerts were issued by State Farm with respect to each of the above named providers.

58. Upon information and belief, Doug Babin was involved, either as the leader or as a significant participant in the investigations by State Farm into each of the above named providers.

### STATE FARM AND CY GOLDBERG, ESQUIRE

59. An integral part of the ACE methodology is to complement State Farm's SIU adjusters with attorneys who can assist in the aggressive investigations of medical providers and facilities, drive up litigation costs, and delay adjudication of claims, all so as to wear down a plaintiff's willingness to fight for a claim's true value and to deter future claims.

60. Upon the implementation of the ACE program in Pennsylvania and through the present, State Farm has relied most heavily on Mr. Goldberg and his firm to perform this complementary role.

61. Specifically, over the course of the past ten years, whenever Doug Babin has been involved in an investigation of a provider, he has invariably retained Mr. Goldberg's firm to assist in the investigation and aggressively litigate any claims involving a targeted provider.

62. Mr. Goldberg's role in the investigation involves everything from performing claim file reviews, to defending State Farm insureds in suits brought by patients of a targeted facility, to taking sworn statements under oath from Sate Farm insureds who have received treatment from a targeted facility.

63. In the course of the investigation, Mr. Goldberg uses the civil process to collect information about providers, which, although irrelevant to the case in which the information is being obtained, allows Mr. Goldberg to provide an opinion as to whether State Farm might be able to use said information to bring a civil lawsuit alleging fraud against the targeted provider.

64. If he opines that a provider can be sued, Mr. Goldberg has invariably been the attorney hired by State Farm to handle the suit.

65. Mr. Goldberg is renowned in the Philadelphia area legal community for his zealous and aggressive investigatory tactics, as well as for the multi-million dollar judgments he has secured against various providers for fraudulent activity he himself has "investigated".

66. State Farm deliberately uses its SIU and Mr. Goldberg to send a clear message to the legal and medical communities that a particular provider or facility is "under investigation" for fraud.

67.    State Farm sends letters to attorneys, advising them that a facility or provider is "under investigation" in order to chill the willingness of attorneys to represent clients who have or might receive treatment from the targeted facility or provider.

68.    State Farm also uses the fact that a claim is "under investigation" to stop payment of any bills on said claim.

69.    Since the year 2001, State Farm has retained Mr. Goldberg's firm to investigate and subsequently bring lawsuits against many of the medical providers against whom SIU alerts had been issued. The lawsuits were/are captioned as follows:

   a)    State Farm, et. al. v. Midtown Medical Center, et. al., 02-cv-07389 (E.D.Pa.)

   b)    State Farm, et. al. v. Metropolitan Family Practice, et. al., 03-cv-00969 (E.D.Pa.)

   c)    State Farm, et. al. v. American Rehab, et. al., 03-cv-05595 (E.D.Pa.)

   d)    State Farm, et. al. v. New Horizont, Inc. et. al., 03-cv-6516 (E.D.Pa.)

   e)    State Farm, et. al. v. Philly Family Practice, et. al., 05-cv-02081(E.D.Pa.)

   f)    State Farm, et. al. v. Arnold Lincow, M.D., et. al., 05-cv-5368 (E.D.Pa.)

   g)    State Farm, et. al. v. Robert Cavoto, D.C., et. al., 05-10716 (Del.Co. Com.Pl.)

   h)    State Farm, et. al. v. Stephen Ficchi, D.O., et. al., 10-cv-00555 (E.D.Pa.)

70.    State Farm has admitted that the purpose of these civil lawsuits, on which State Farm has spent millions of dollars, is not to collect money, but is rather to send a message of intimidation to the legal community to chill claims.

71.    Mr. Goldberg's firm has become renowned for its aggressive and single minded pursuit of anyone associated with a provider or facility which has been targeted by State Farm, and his presence in a matter alone sends State Farm's desired message that State Farm has facts or evidence to suggest wrongdoing on the part of a provider.

72. State Farm actively exploits Mr. Goldberg's reputation and approves of his tactics specifically in order that this message be sent.

**THE ATTACK ON DR. SCHATZBERG**

73. Dr. Schatzberg is a chiropractor who employs other chiropractors at his facilities who treat a largely African-American patient base from the metropolitan Philadelphia region.

74. Dr. Schatzberg's employees provide only professionally appropriate, reasonable, and necessary care to all of their patients, and the bills submitted for said treatment are fully reflective of this fact.

75. Because of the quality of the treatment provided, and the facilities themselves, Dr. Schatzberg's has become a large, busy practice.

76. Unfortunately, because he employs chiropractors, because he treats mostly African-American patients, and because the practice is a major source of auto claim expense, State Farm has now targeted Dr. Schatzberg for destruction, pursuant to its ACE profit scheme, by openly conducting an "investigation" which falsely communicates to the community that Dr. Schatzberg has engaged in fraudulent activity.

77. Doug Babin is leading the "investigation" on Dr. Schatzberg on behalf of State Farm, and has retained Mr. Goldberg to assist per usual.

78. Upon information and belief, State Farm has issued SIU alerts concerning each of Dr. Schatzberg's facilities and a project file concerning the investigation into his practice has been opened.

79. On June 3, 2010, Mr. Babin left a telephone message for Ms. Arlene O'Brien, a long time former employee of Dr. Schatzberg's.

80. In the telephone message, Mr. Babin stated that he was calling to speak with Ms. O'Brien about Dr. Schatzberg.

81. Ms. O'Brien returned Mr. Babin's call that evening and spoke with him directly on the telephone.

82. Mr. Babin stated to Ms. O'Brien that he is a "fraud investigator" for State Farm and that he is "investigating the billing practices of Dr. Peter Schatzberg."

83. Mr. Babin stated that he had already spoken with several other employees of Dr. Schatzberg's practice in the course of his "fraud investigation".

84. Mr. Babin pressed Ms. O'Brien to schedule a meeting with him in order to ask questions about Dr. Schatzberg and his billing practices.

85. Based on the statements made by Mr. Babin, as well as their aggressive tone, Ms. O'Brien believed that State Farm possesses facts or information that Dr. Schatzberg is engaging or has engaged in fraudulent billing practices.

86. Upon information and belief, it is averred that Mr. Babin has had similar conversations with other employees of Dr. Schatzberg's in which similar, if not identical statements have been communicated.

87. At the same time Mr. Babin has been falsely accusing Dr. Schatzberg of committing fraud in his billing practices, State Farm has retained Mr. Goldberg's office to conduct an "investigation" of Dr. Schatzberg in order to send the same message to the legal community.

88. Mr. Goldberg's mere presence in a matter is a signal to the parties that State Farm has evidence or facts which suggest impropriety on the part of a provider, which signal State

Farm knows is strengthened when Mr. Goldberg uses the civil process to discover information about the practice which has no relevance to the underlying cases.

89.   The manner in which Mr. Goldberg uses the civil process in each case is closely monitored and encouraged by State Farm.

90.   State Farm has assigned Mr. Goldberg to represent the defendants in a case currently pending in the Philadelphia Court of Common Pleas captioned <u>Martin, et. al. v. Cooper, et. al.</u>, October Term, 2008, No. 2843.

91.   The case was assigned to Mr. Goldberg because the plaintiff, Terry Martin, treated for injuries sustained in an automobile accident at Dr. Schatzberg's office.

92.   Terry Martin is African-American.

93.   The purpose of this assignment is to have Mr. Goldberg very publicly utilize the civil process to discover information about Dr. Schatzberg's practice, even though said information has no relevance to the case, and to create the impression in the legal and medical communities that State Farm possesses evidence of impropriety on the part of Dr. Schatzberg.

94.   Pursuant to this purpose, Mr. Goldberg's associate compelled the deposition of a billing clerk who works for Dr. Schatzberg and spent most of the questioning on matters which were only relevant to State Farm's "investigation".

95.   The billing clerk had no information which was relevant to the injuries suffered by Terry Martin or the actual treatment received by Terry Martin.

96.   Also, in the same case, Mr. Goldberg's associate has demanded that the chiropractor who treated the plaintiffs appear and testify at trial of the matter rather than preserve the doctor's testimony by videotape. The purpose of this demand is simply to inconvenience

the doctor as much as possible and create an unwillingness on his part to assist patients in litigation.

97. Another matter which was assigned to Mr. Goldberg's office by State Farm specifically to investigate and create a false perception of impropriety by Dr. Schatzberg is the case of Graham v. Newsuan, PCCP, January Term, 2010, No. 1729.

98. Angela Graham was injured in an automobile accident and received treatment for her injuries in Dr. Schatzberg's office.

99. Upon information and belief, the Graham case was funneled to the SIU specifically because the plaintiff treated at Dr. Schatzberg's office for injuries suffered in a motor vehicle accident.

100. Angela Graham is African-American.

101. State Farm also assigned to Mr. Goldberg the case of James v. Hub Truck Rental, et. al., PCCP, January Term, 2008, No. 03390, for the purpose of using it to investigate Dr. Schatzberg and create the false perception of impropriety on his part.

102. The case was funneled to Mr. Goldberg because the plaintiff, Vincent James, treated for injuries at Dr. Schatzberg's office for injuries suffered in a motor vehicle accident.

103. Vincent James is African-American.

104. Also funneled by State Farm to Mr. Goldberg was the first party claim of Anthony Fullwood, a State Farm insured who was injured in an automobile accident and received treatment for his injuries at Dr. Schatzberg's office.

105. Mr. Fullwood was insured at the time of his accident with State Farm under policy number 1391-187-38.

106.   As a State Farm insured, Mr. Fullwood was entitled to first party medical benefits under his policy.

107.   On March 11, 2010, a Special Investigations Unit adjuster from State Farm named Nova Crespo sent a letter to the offices of Dr. Schatzberg, which was copied to Mr. Fullwood's attorney, stating that Mr. Fullwood's claim for payment of Dr. Schatzberg's medical bills was "under investigation."

108.   Ms. Crespo sent identical letters to the offices of both Dr. Schatzberg and Mr. Fullwood's attorney, on April 12, 2010, and May 20, 2010, again advising Mr. Fullwood's attorney that the claim for medical benefits was "under investigation."

109.   On May 11, 2010, Matthew Moroney, Esquire, an associate of Mr. Goldberg's firm, wrote to Mr. Fullwood's attorney and advised that he had been asked by State Farm to assist in reviewing Mr. Fullwood's claim for medical benefits.

110.   Mr. Moroney's letter asked that Mr. Fullwood provide to him a statement under oath, as required by the State Farm policy.

111.   It is highly unusual for an insurance company to demand a statement under oath from its own insured on a claim for first party medical benefits that is taken by an attorney with a court reporter.

112.   State Farm knows this, Mr. Goldberg knows this, and certainly they expect that the claimant's counsel will know it, such that merely demanding the statement under oath under these circumstances communicates that State Farm has facts or evidence which demonstrates wrongdoing on the part of Dr. Schatzberg.

113.   On June 9, 2010, another associate from Mr. Goldberg's office took a statement under oath from Mr. Fullwood in the presence of a court reporter.  Upon information and belief,

virtually all of the questioning related to the administration and mechanics of Dr. Schatzberg's practice, rather than the actual treatment Mr. Fullwood received.

114. The letters from Nova Crespo indicating that Mr. Fullwood's claim for medical benefits is "under investigation," followed by the extraordinary act of taking a statement under oath by an attorney (from Cy Goldberg's office) in which the questioning centered on the practice rather than the patient, was intended and did send the clear message that State Farm has evidence of professional impropriety on the part of Dr. Schatzberg.

115. Again, State Farm has no evidence or facts to suggest that Dr. Schatzberg engaged in any professional impropriety with respect to Mr. Fullwood's treatment or billing, or in any other claimant's billing for that matter.

116. Anthony Fullwood is African-American.

117. In addition to all of the above matters, State Farm has also assigned to Mr. Goldberg the defense of a small claims matter brought by Dr. Schatzberg's office against State Farm for unpaid medical bills in Delaware County.  Though the District Justice decided the small claims case in Dr. Schatzberg's favor, Mr. Goldberg has appealed the decision with the intent of using the civil process to discover information about Dr. Schatzberg's practice which might be used to create the false perception of wrongdoing on his part.

118. All of the tactics described above – the false accusations of fraud made by Mr. Babin to Ms. O'Brien and others; the letters from Nova Crespo stating that a claim is "under investigation"; and the use of the civil process by Mr. Goldberg in various third and first party cases to publicly inquire about the administration and mechanics of Dr. Schatzberg's practice – are all designed to do one thing: create the false impression in the

community that Dr. Schatzberg is engaged in fraudulent or otherwise improper professional practices.

119.   The purpose of creating this false impression is to destroy Dr. Schatzberg's business and thus eliminate yet one more source of claim payments.

120.   At all times material hereto, Doug Babin acted within the course and scope of his employment, agency, and/or representation of State Farm, with the full knowledge and authorization of State Farm to do so.

121.   At all times material hereto, Nova Crespo acted within the course and scope of her employment, agency, and/or representation of State Farm, with the full knowledge and authorization of State Farm to do so.

122.   At all times material hereto, Mr. Goldberg and his associates have acted within the course and scope of their agency, employment, and/or representation of State Farm, with the full knowledge and authorization of State Farm to do so.

123.   State Farm's actions have been and are deliberate, malicious, wanton, and reckless.

## COUNT I
## DR. PETER SCHATZBERG V. STATE FARM
## DEFAMATION

124.   All preceding paragraphs are incorporated herein by reference.

125.   The defendant has defamed Dr. Schatzberg through the actions described more fully in the preceding paragraphs.

126.   The content of the defendant's statements, by and through its authorized representatives, orally and in writing to third parties concerning Dr. Schatzberg, would tend to harm (and have harmed) Dr. Schatzberg's reputation so as to lower Dr. Schatzberg in the estimation

of the community and/or to deter third persons from associating or dealing with Dr. Schatzberg.

127. State Farm has published the written and oral statements described above to third parties, including Dr. Schatzberg's employees, consulting physicians, and attorneys.

128. The defendant has also slandered Dr. Schatzberg.

129. The defendant's statements (both libelous and slanderous) clearly applied to Dr. Schatzberg.

130. The third party recipients of the defamatory statements would (and have) understood the defendant's authorized representatives to be saying that facts exist which indicate that Dr. Schatzberg has engaged in fraudulent and/or otherwise improper and/or illegal professional conduct.

131. The defendant's defamatory statements impute to Dr. Schatzberg conduct, characteristics, and/or a condition that would adversely affect Dr. Schatzberg in his lawful business or trade.

132. The defendant's defamatory statements and actions were defamatory per se.

133. The defendant's actions as described above have also been designed to communicate and have communicated to the community the false allegation that Dr. Schatzberg is or has engaged in fraudulent activity or other professional impropriety.

134. Dr. Schatzberg has suffered actual damages and/or special harm including monetary and/or out of pocket loss caused by the defendant's defamations.

135. Dr. Schatzberg has suffered general damages as a result of defendants' defamations including loss of reputation, anxiety, emotional distress, and sleeplessness.

136.   State Farm has acted negligently, recklessly, wantonly, willfully, deliberately, and/or

maliciously.

137.   Neither State Farm's nor its authorized representatives' conduct is privileged.  In the

alternative, to the extent a privilege may apply, State Farm and its authorized

representatives have abused that privilege.

WHEREFORE, plaintiff, Dr. Peter Schatzberg, demands damages from defendants, State

Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, jointly

and/or severally, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars, plus

reasonable attorney's fees, interest, punitive damages, and all applicable costs.

**COUNT II**
**DR. PETER SCHATZBERG V. STATE FARM**
**FALSE LIGHT INVASION OF PRIVACY**

138.   All preceding paragraphs are incorporated herein by reference.

139.   By their actions described more fully above, the defendants have given publicity to a

matter concerning Dr. Schatzberg that has placed him before the public in a false light.

140.   Specifically, defendants gave publicity to their false allegations of fraud and professional

impropriety on the part of Dr. Schatzberg by:

a)      Sending letters to Dr. Schatzberg's office and the office of the attorney for

Anthony Fullwood indicating that Mr. Fullwood's claim was "under investigation" while

at the same time, sending letters and scheduling the highly unusual statement under oath

of Mr. Fullwood by an associate of Mr. Goldberg's in which all of the questioning

centered on the administration and mechanics of Dr. Schatzberg's practice;

b)      Doug Babin's direct conversations with Arlene O'Brien and an unknown number of other employees of Dr. Schatzberg's in which Mr. Babin stated he was investigating Dr. Schatzberg for alleged fraudulent billing practices;

c)      Communicating to the attorneys, court reporters, Judges, and assorted other individuals involved in the <u>Martin v. Cooper</u>, <u>James v. Hub Truck Rental</u> and <u>Graham v. Newsuan</u> cases that State Farm has facts or evidence to suggest fraudulent activity or other impropriety on the part of Dr. Schatzberg; and

d)      Other such acts which are as yet unknown but will be revealed in discovery of this matter.

141.    The false light in which Dr. Schatzberg has been placed would be highly offensive to a reasonable person.

142.    State Farm knew its allegations (direct and indirect) of fraudulent activity and professional impropriety by Dr. Schatzberg are false and/or recklessly disregarded the falsity of the allegations and the false light in which Dr. Schatzberg would be placed thereby.

143.    Dr. Schatzberg has suffered actual damages and/or special harm including monetary and/or out of pocket loss caused by the defendants' false light invasion of privacy.

144.    Dr. Schatzberg has suffered general damages as a result of defendants' false light invasion of privacy including loss of reputation, anxiety, emotional distress, and sleeplessness.

WHEREFORE, plaintiff, Dr. Peter Schatzberg, demands damages from defendants, State

Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, jointly

and/or severally, in a sum in excess of Fifty Thousand ($75,000.00) Dollars, plus reasonable

attorney's fees, interest, punitive damages, and all applicable costs.


Respectfully submitted,
BARATTA, RUSSELL & BARATTA


By: _____(APB2)_____
ANDREW P. BARATTA, ESQUIRE
Attorney for Plaintiff
Attorney I.D. #82250
3500 Reading Way
Huntingdon Valley, PA   19006
(215) 914-2222

Date: _____6/15/10_____

## VERIFICATION

Plaintiff, Dr. Peter Schatzberg, hereby verifies that the information contained in the foregoing is based on first-hand information and on information furnished to counsel and obtained by counsel in the course of this lawsuit. The language of the document is that of counsel and not of the affiant. To the extent that the contents of the document are based on information furnished to counsel and obtained by counsel during the course of this lawsuit, the affiant has relied upon counsel in taking this verification. All statements are founded upon reasonable belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

**Dr. Peter Schatzberg**