**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER SCHATZBERG, D.C., et al., | : | |
| | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY, et al., | : | **NO. 10-2900** |
| Defendants. | : | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.,**                                              **JULY 12, 2012**

**I.      INTRODUCTION**

Peter Schatzberg, D.C., and his medical practice, Philadelphia Pain Management, Inc.,

bring a six count Amended Complaint against State Farm Mutual Automobile Insurance

Company and State Farm Fire & Casualty Company (collectively "State Farm") alleging that

State Farm is attempting to eliminate his medical practice by (1) falsely accusing him of having

engaged in fraudulent business activity, (2) creating the false perception in the community that he

has engaged in professional impropriety, and (3) engaging in a pattern of racketeering activity

with others in order to systematically pay significantly less than is legally owed on treatment

provided by Plaintiffs to State Farm insureds.

State Farm filed the present Motion to Dismiss the Amended Complaint (Doc. No. 14).

State Farm seeks to have five counts of the Amended Complaint dismissed for failure to state a

claim under Rule 12(b)(6), and to have Count III, a state law claim, dismissed for lack of independent jurisdiction, or alternatively to dismiss the Plaintiffs' demand for attorney's fees as to that Count.  For the reasons that follow, the Court grants in part and denies in the part the Motion to Dismiss.

## II.     FACTUAL BACKGROUND

Dr. Schatzberg is a licensed chiropractor and owner of a large chiropractic and pain management practice with four locations in the greater Philadelphia area, including Philadelphia Pain Management, Inc.  Am. Compl. ¶ 7.  Many of Dr. Schatzberg's patients have suffered injuries as a result of automobile accidents, and his treatment is sometimes billed to insurance companies like State Farm pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law (75 Pa. Cons. Stat. § 1701, et seq.) ("MVFRL").  Id. ¶ 8.  Dr. Schatzberg alleges that because of his large practice, which is "a significant source of auto claim expense to State Farm . . . [his] practice has been targeted for destruction by State Farm pursuant to a revenue strategy implemented by State Farm beginning in the 1990's called ACE."  Response at 15 (citing Am. Compl. ¶¶ 10-41).

According to Dr. Schatzberg, State Farm began implementing the "Advancing Claims Excellence" ("ACE") program  in an effort to reduce claim payouts by approximately one billion dollars per year.  Id. ¶¶ 16-23.  One element of this cost reduction program is to characterize all claims for soft tissue injuries in motor vehicle accidents as potentially fraudulent, and to pursue the doctors who treat such injuries for perpetuating such fraud.  Id. ¶¶ 28-31.  State Farm allegedly executes the ACE program by enlisting State Farm's fraud unit, the Special

Investigations Unit ("SIU"), and outside counsel to investigate and litigate against any and all claimants who have sustained, and doctors who have treated, soft tissue injuries in motor vehicle accidents regardless of whether cause for suspicion exists.  Id. ¶¶ 30-31.  These fraud investigations are designed to create a public perception that the claimants and the doctors are suspected of fraud or other wrongdoing.  Id. ¶¶ 51-52, 64.  Accordingly, once the legal and medical communities learn of a State Farm investigation, word spreads, and the stigma of a fraud investigation quickly serves to isolate and destroy the business of the targeted provider or facility irrespective of wrongdoing.  Id.  Dr. Schatzberg claims that the ACE program allegedly achieves success when it can eliminate the business of a provider that represents a significant source of claim expense for State Farm.  Id. ¶¶ 40-53.

In the Philadelphia region, SIU adjuster Mr. Doug Babin, and the law firm of attorney Cy Goldberg are allegedly most often involved in implementing the ACE program and performing investigations.  Id. ¶¶ 44, 59.  Mr. Goldberg is alleged to have a reputation for using aggressive tactics to target medical providers for fraud in civil litigation on behalf of State Farm.  Id. ¶¶ 58-69.  In particular, Dr. Schatzberg claims that Mr. Goldberg "uses the civil process to collect information about providers and provide[s] an opinion as to whether State Farm might be able to use said information to bring a civil lawsuit alleging fraud against the targeted provider."  Id. ¶ 62.  Indeed, since 2001, State Farm has retained Mr. Goldberg to investigate and bring at least eight (8) different lawsuits against various medical providers that were flagged by the SIU.[1]  Id. ¶ 67.  It is further alleged that because of Mr. Goldberg's reputation for aggressively pursuing

---

[1] It is alleged that State Farm has admitted that the purpose of these suits is "to send a message of intimidation to the legal community and to chill claims."  Id. ¶ 68.

fraud claims on behalf of State Farm, "his involvement alone sends State Farm's desired message that a facility is being targeted."  Id. ¶ 69.

In addition to supposedly aggressive investigative and litigious practices, State Farm also allegedly reduces claims payouts pursuant to the ACE program by manipulating the peer review process of the MVFRL.[2]  Id. ¶ 117.  State Farm contracts with specific peer review organizations, such as Rehabilitation Planning, Inc., according to Dr. Schatzberg, to obtain favorable peer review reports in exchange for giving the peer review organization a steady source of business. Id. ¶¶ 129, 131-32.  In particular, Rehabilitation Planning, Inc. purportedly assigns a great many of these alleged "sham" peer reviews of chiropractic treatments to Jane McBride, D.C.  Id. ¶¶ 138-39.

Dr. Schatzberg alleges that State Farm has singled him and his chiropractic practice out for destruction in accordance with its ACE program.  Id. ¶ 74.  State Farm has allegedly targeted Dr. Schatzberg in a number of ways.  First, Mr. Babin allegedly called Ms. Arlene O'Brien and other current and former employees of Dr. Schatzberg to (1) inform them that he is a "fraud investigator," (2) explain that State Farm was investigating Dr. Schatzberg's billing practices, and (3) give these individuals the impression that State Farm possesses facts that establish Dr. Schatzberg is engaged in fraud.  Id. ¶¶ 75-82.

_____

[2] Pursuant to the MVFRL, an insurer may challenge the reasonableness and necessity of an insured's medical treatment by submitting the insured's medical bill to a peer review organization.  While the review is occurring, an insurer may withhold payment of an insured's medical bills.  The results of the peer review determine whether the insurer must pay the provider any outstanding amounts.

Second, at State Farm's direction, Mr. Goldberg allegedly began investigating and pursuing civil litigation against Dr. Schatzberg in various third and first party cases.  Id. ¶ 83-85. Dr. Schatzberg alleges that these cases were brought for the dual purposes of conducting a fishing expedition into his billing practices and to send a message that State Farm has information suggesting Dr. Schatzberg is engaged in fraud.  Id.  Specifically, in one case, Mr. Goldberg, on behalf of the defendant against the plaintiff, Mr. Terry Martin, a patient of Dr. Schatzberg, allegedly (1) compelled the deposition of a billing clerk to inquire about the administration and mechanics of Dr. Schatzberg's practice, and (2) refused to take the trial testimony of a chiropractor via videotape to accommodate his work schedule.  Id. ¶¶ 90-91.

Third, in the case of Mr. Anthony Fullwood, another patient of Dr. Schatzberg, an SIU adjuster from State Farm named Nova Crespo sent a letter to the offices of Dr. Schatzberg and Mr. Fullwood's attorney on March 11, 2010 stating that Mr. Fullwood's claim for payment of Dr. Schatzberg's medical bills was "under investigation."  Id. ¶ 102.  Ms. Crespo sent the same letter to the offices of both Dr. Schatzberg and Mr. Fullwood's attorney two more times on April 12, 2010 and May 20, 2010.  Id. ¶ 103.  Likewise, on May 11, 2010, Mr. Goldberg's colleague, Mr. Matthew Moroney, allegedly sent a letter to Mr. Fullwood's attorney advising him that he had been asked by State Farm to assist in reviewing Mr. Fullwood's claim for medical benefits, and requesting that Mr. Fullwood provide a sworn statement regarding Dr. Schatzberg's practice.  Id. ¶¶ 104-108.

Finally, State Farm allegedly conspired with Rehabilitation Planning and Dr. McBride to create and utilize sham peer review reports in an effort to cut off payments to Dr. Schatzberg.  Id. ¶ 156.  Dr. Schatzberg offers, by way of example, the case of his patient, Mr. James Nelson, a

State Farm insured who was injured in an automobile accident.  Id. ¶ 166.  Dr. Schatzberg alleges

that after he submitted invoices to State Farm for Mr. Nelson's treatment, (1) State Farm

forwarded only a portion of Mr. Nelson's records to Rehabilitation Planning, (2) Rehabilitation

Planning assigned the case to Dr. McBride, and (3) Dr. McBride determined that the only

reasonable and necessary treatments were those no longer legally reviewable under MVFRL.  Id.

¶¶ 167-199.  Thus, on the basis of Dr. McBride's report, State Farm denied payment to Dr.

Schatzberg and Philadelphia Pain Management.

     Dr. Schatzberg and Philadelphia Pain Management filed a six count Amended Complaint

against State Farm alleging various state and federal law claims.  Now before the Court is State

Farm's Motion to Dismiss (Doc. No. 14) for failure to state a claim upon which relief can be

granted.

## III.   LEGAL STANDARD

     A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  Although Rule 8 of the Federal Rules of Civil Procedure requires

only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.

R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-55 (2007)

(quoting Conley, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  Id. (citations

omitted).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the

speculative level . . . ."  Id. at 555 (citations omitted).  To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (confirming that Twombly applies to all civil cases).

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

## IV.    DISCUSSION

Dr. Schatzberg claims, in his individual capacity, that State Farm defamed him (Count I) and invaded his privacy by portraying him in a false light (Count II). He further claims on behalf of Philadelphia Pain Management that State Farm violated the MVFRL (Count III). Finally, both Plaintiffs assert that State Farm violated the Pennsylvania Bad Faith Insurer Statute (Count IV), and that it violated and conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts V & VI).

State Farm moves to dismiss Counts I, II, IV, V, and VI of the Amended Complaint for failure to state claims, and Count III for lack of independent jurisdiction.  The Court will address each claim in turn.

A.      **Defamation**

Dr. Schatzberg alleges in Count I of his Amended Complaint that State Farm defamed him through oral and written representations to third parties and consequently has harmed his reputation and lowered him in the estimation of the community.

In order to state a defamation claim, a plaintiff must allege "(1) The defamatory character of the communication[;] (2) [i]ts publication by the defendant[;] (3) [i]ts application to the plaintiff[;] (4) [t]he understanding by the recipient of its defamatory meaning[;] (5) [t]he understanding by the recipient of it as intended to be applied to the plaintiff[;] (6) [s]pecial harm resulting to the plaintiff from its publication[; and] (7) [a]buse of a conditionally privileged occasion." 42 Pa. Cons. Stat. § 8343(a).  Additionally, Pennsylvania law requires that the plaintiff "demonstrate that the statement results from fault amounting at least to negligence, on the part of the defendant."  Ruder v. Pequea Valley Sch. Dist., 790 F. Supp. 2d 377, 399 (E.D. Pa. 2011).

Courts are charged, in the first instance, with determining whether a particular statement is capable of a defamatory meaning.  Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co., No. 08-2434, 2008 WL 4771850, at *3 (E.D. Pa. Oct. 30, 2008) (noting that a jury decides if the statement was actually defamatory to a reader or listener).  "To ascertain this meaning, the court must view the statements in context."  Id. (citing Tucker v. Phila. Daily News, 848 A.2d 113, 124

(Pa. 2004)) (internal quotations omitted).  A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him," Tucker, 848 A.2d at 124, or if it "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." Giordano v. Claudio, 714 F. Supp. 2d 508, 526 (E.D. Pa. 2010) (citing Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1995)).

A defamation claim under Pennsylvania law may exist "where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (citations omitted).  "Pennsylvania courts have shown a willingness to interpret relatively mild statements as being capable of a defamatory meaning." Allied, 2008 WL 4771850, at *3 n.2.  However, for a defamation by implication claim to be successful, the "innuendo must be warranted, justified and supported by the publication." Mzamane, 693 F. Supp. 2d at 478 (quoting Livingston v. Murray, 612 A.2d 443, 449 (Pa. Super. Ct. 1992).  Likewise, "the literal accuracy of separate statements will not render a communication 'true' where . . . the implication of the communication as a whole was false." Dunlap v. Phila. Newspapers, Inc., 448 A.2d 6, 15 (Pa. Super. Ct. 1982).

State Farm argues that none of the statements made by State Farm or its representatives alleged in the Amended Complaint are capable of defamatory meaning.[3]  Dr. Schatzberg has

---

[3] State Farm also argues that its statements were entitled to absolute judicial privilege.  However, Dr. Schatzberg has since narrowed his defamation allegations to include only statements related to Mr. Fullwood, an individual to whom State Farm had not initiated litigation at the time of the filing of the Amended Complaint, and there is no indication in the pleadings that State Farm

alleged that three statements made by State Farm representatives are defamatory: (1) the oral statement made by Mr. Babin to Dr. Schatzberg's former employee, Ms. O'Brien, Am. Compl. ¶¶ 75-82, (2) the letters from SIU investigator, Ms. Crespo to Mr. Fullwood's attorney, id. ¶¶ 102-103, and (3) the letter from Mr. Moroney to Mr. Fullwood's attorney.  Id. ¶ 104.  The Court will address each of these statements in turn.

### 1.    Mr. Babin's statement

The first statement that Dr. Schatzberg alleges was defamatory in nature was made in a series of telephone calls from Mr. Babin, an SIU investigator, to Ms. O'Brien and other current and former employees of Dr. Schatzberg.  During the call with Ms. O'Brien, Mr. Babin allegedly said, in an "aggressive tone," that he is a "fraud investigator," and that State Farm was investigating Dr. Schatzberg's billing practices.  Id. ¶¶ 75-82.  He also informed Ms. O'Brien that he had already spoken with several other employees of Dr. Schatzberg's practice, and "pressed Ms. O'Brien to schedule a meeting with him in order to ask questions about Dr. Schatzberg and his billing practices."  Id. ¶¶ 79-80.

Dr. Schatzberg alleges that "[b]ased on the totality of the statements made by Mr. Babin, and their aggressive tone, Ms. O'Brien believed that State Farm possesses facts or information that Dr. Schatzberg is engaging in or has engaged in fraudulent billing practices," and that State Farm was making "accusations of fraud" against the doctor.  Id. ¶¶ 81, 112.  He also maintains that Mr. Babin's statements are reasonably capable of imputing criminal conduct on the part of

---

intended to initiate such litigaiton.  Response at 29.  Indeed, defamation which did not "occur in the pleadings, . . . in actual trial or argument of a case," or in preparation for such proceedings, is not protected by absolute judicial privilege.  Post v. Mendel, 507 A.2d 351, 355 (Pa. 1986).

Dr. Schatzberg, thus tending to harm his reputation and lower him in the estimation of the community or deter third parties from dealing with him.  Tucker, 848 A.2d at 124; see also Allied, 2008 WL 4771850, at *4 (noting that a statement by State Farm inferring that an individual is being investigated for fraudulent business practices was capable of defamatory meaning).

In determining whether Mr. Babin's statements are actionable, the Allied case is instructive.  In Allied, State Farm investigated a medical practice for billing fraud and sent a series of letters to patients and attorneys on SIU letterhead requesting information about particular services rendered by the provider and suggesting that the provider was being uncooperative in State Farm's investigation.  Allied, 2008 WL 4771850, at *6.  The Court found that the statements in the letters were capable of a defamatory meaning, in part, because the use of SIU letterhead was suggestive that the letter related to a fraud investigation, and the plaintiff pled that the SIU department was synonymous with fraud investigations.

Here, Mr. Babin allegedly directly identified himself as a "fraud investigator."  Likewise, he explained that he was investigating Dr. Schatzberg's billing practices, and as in Allied, he requested information from Ms. O'Brien about those billing practices.  While the Court appreciates State Farm's argument that Mr. Babin's statements were made in the course of satisfying State Farm's state statutory mandate that, as a motor vehicle insurer, it maintain a motor vehicle insurance antifraud plan, see 75 Pa. Cons. Stat. § 1811, based on the facts alleged, Mr. Babin's statements, coupled with his allegedly "aggressive tone," could lead one to believe—and allegedly did lead Ms. O'Brien to believe—that State Farm possessed facts or

11

information that Dr. Schatzberg was engaging in or had engaged in fraudulent billing practices or criminal conduct.  Am. Compl. ¶¶ 81-82.

Accordingly, accepting, as the Court must, the allegations of the Amended Complaint as true, the Court concludes that Mr. Babin's statement is at least capable of defamatory meaning.

### 2.      Ms. Crespo's letters

Dr. Schatzberg next alleges that in the course of State Farm's investigation of Mr. Fullwood's claim for benefits, State Farm's SIU adjuster Ms. Crespo sent a letter to the offices of Dr. Schatzberg and Mr. Fullwood's attorney on March 11, 2010 stating that Mr. Fullwood's claim for payment of Dr. Schatzberg's medical bills was "under investigation." Id. ¶ 102.  Ms. Crespo allegedly sent the same letter to the offices of both Dr. Schatzberg and Mr. Fullwood's attorney twice, on April 12, 2010 and May 20, 2010. Id. ¶ 103.

Again, the Court finds Allied instructive.  There, the Court analyzed letters from a State Farm's SIU claims representative to attorneys and patients notifying them that their claim was "under investigation," and requesting information regarding the recipients' treating physicians. Allied, 2008 WL 4771850, at *4.  The Allied court noted that although some attorneys may interpret the statement "under investigation" as merely informative, "[o]thers, especially those representing clients in insurance matters, may have interpreted the phrase 'under investigation' by an SIU claim representative to have negative connotations" and "to imply that Allied was engaged in some type of insurance fraud."  Id.

As in Allied, Ms. Crespo's letters were sent to Mr. Fullwood's attorney and informed him that the claim was "under investigation."  Although the letter does not specify that the

investigation pertained to fraudulent conduct, Dr. Schatzberg has alleged that "State Farm's SIU does nothing but investigate fraud."  Am. Compl. ¶ 39.  Because the Court must accept this allegation as true, Mr. Fullwood's attorney could infer from Ms. Crespo's multiple letters that Dr. Schatzberg and his client were being investigated for fraudulent business practices, an inference that could injure Dr. Schatzberg in his business or profession.

Accordingly, based on the facts alleged, the Court concludes that Ms. Crespo's letters are capable, albeit barely, of defamatory meaning.

### 3.    Mr. Moroney's letter

Lastly, Dr. Schatzberg alleges that on May 11, 2010, Mr. Goldberg's colleague, Mr. Moroney, sent a letter to Mr. Fullwood's attorney advising that he had been asked by State Farm to assist in reviewing Mr. Fullwood's claim for medical benefits, and requesting that Mr. Fullwood provide a sworn statement pursuant to State Farm policy.  Id. ¶¶ 104-108.  Dr. Schatzberg alleges the involvement of Mr. Goldberg's firm alone "sends State Farm's desired message that a facility is being targeted" for a fraud investigation, and that because the letter was received shortly after Ms. Crespo's letters, in context, Mr. Moroney's letter conveyed the message that Dr. Schatzberg was under investigation for fraud.  Response at 32; Am. Compl. ¶¶ 63-69.

Again, although Mr. Moroney's letter is mildly worded on its face, and does not even mention Dr. Schatzberg or his practice by name, the context in which his letter was received could carry a defamatory implication.  If the Court's analysis focused entirely on the content only of Mr. Moroney's letter, a rather large inferential leap would be required to sustain Dr.

Schatzberg's allegation.  However, as in <u>Allied</u>, this letter was the second letter received by Mr. Fullwood's attorney on behalf of State Farm related to the purported investigation into his client's claim for benefits.  Likewise, the Court must accept as true for the purposes of this motion Dr. Schatzberg's allegation that the involvement of Mr. Goldberg's firm "sends State Farm's desired message that a facility is being targeted" for a fraud investigation.  Although Dr. Schatzberg is not specifically named in Mr. Moroney's letter, when considered in sequence with Ms. Crespo's letters which do name Dr. Schatzberg, Mr. Fullwood's attorney could infer that Dr. Schatzberg and his client were being investigated for fraudulent practices.

Accordingly, because the Court concludes that the statements are capable of defamatory meaning, the Court denies State Farm's motion as it pertains to Dr. Schatzberg's defamation claim.

### B.      False Light/Invasion of Privacy

Dr. Schatzberg alleges in Count II of the Amended Complaint that State Farm invaded his privacy by portraying him in a false light and giving publicity to his private life.  In order to state a claim of false-light invasion of privacy under Pennsylvania law, a plaintiff must allege "(1) publicity, (2) given to private facts, (3) which could be highly offensive to a reasonable person, and (4) which are not of legitimate concern to the public."  <u>Smith v. Borough of Dunmore</u>, 633 F.3d 176, 182 (3d Cir. 2011); <u>Harris v. Easton Pub. Co.</u>, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984); <u>see</u> <u>also</u> Rest. 2d Torts § 652E.  State Farm argues that Dr. Schatzberg fails to state a claim of false light invasion of privacy because (1) he fails to allege facts establishing that State

Farm gave publicity to private facts, and (2) State Farm's actions taken in the course of litigation or in contemplation of litigation are subject to an absolute judicial privilege.

"Publicity," for the purposes of a false light invasion of privacy claim, requires more than the "publication" required to sustain a claim for defamation.  Harris, 483 A.2d at 1384 (citing Rest. 2d Torts § 652D).  Rather, it requires that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Id.; Vogel v. W. T. Grant Co., 327 A.2d 133, 137 (Pa. 1974) ("The disclosure . . . must be a public disclosure, and not a private one; there must be, in other words, publicity.  It is an invasion of his rights to publish in a newspaper that the plaintiff did not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but not to communicate the fact to the plaintiff's employer, or to any other individual, or even to a small group. . . .") (quoting W. Prosser, Handbook of the Law of Torts § 117 at 810-12 (4th ed. 1971)).  Disclosure to only one person is insufficient, Degiovanni Sharp v. Whitman Council, Inc., No. 05-4297, 2006 WL 2261623, at *10 (E.D. Pa. Aug. 3, 2006), whereas media publication to as few as seventeen people has been held sufficient to constitute publicity as a matter of law.  Harris, 483 A.2d at 1385-86; see also Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. 1997) (noting that "publicity" does not include notifying those who have an interest in the matter).

Dr. Schatzberg does not allege anywhere in the Amended Complaint that State Farm published any of the alleged statements in a newspaper, periodical, or any medium that has any sort of wide circulation among the public.  Rather, Dr. Schatzberg's claim centers on two primary contentions: (1) State Farm spread false information about Dr. Schatzberg to particular

individuals in the medical and legal communities via letter and phone call, and (2) State Farm deployed Mr. Goldberg in litigation for the purpose of sending a false message to the legal community that Dr. Schatzberg was engaged in wrongdoing.  Neither of these actions on the part of State Farm constitutes publicity for the purpose of a false light invasion of privacy action.

First, Dr. Schatzberg alleges that State Farm publicized via letter and phone call to particular individuals in the medical or legal community that Dr. Schatzberg was engaged in wrongdoing.  The Amended Complaint specifies that Mr. Babin told Ms. O'Brien and "several other [unnamed] employees of Dr. Schatzberg's practice," that he was a "fraud investigator" and was "investigating [Dr. Schatzberg's] billing practices . . . ."  Am. Compl. ¶¶ 78-79.  In light of the nature of Mr. Babin's alleged communications – phone calls, as opposed to media publication – and the vague allegation about the number of persons he contacted, the Court concludes that these allegations fall short of constituting the publicity necessary to establish a false light invasion of privacy claim.

The same can be said for the letters allegedly sent from Ms. Crespo and Mr. Moroney to Dr. Schatzberg's office and Mr. Fullwood's attorney.  As discussed above, Ms. Crespo sent letters to Dr. Schatzberg's office and to Mr. Fullwood's attorney informing them that Mr. Fullwood's claim was "under investigation."  Mr. Moroney also sent a letter to Mr. Fullwood's attorney informing him that he had been retained to assist in reviewing Mr. Fullwood's claim for medical benefits.  At most, these letters were sent to two individuals, both with an interest in the communication.  In other words, although such dissemination may be sufficient to establish publicity for a defamation claim, it is a far cry from the publicity necessary to establish a false light invasion of privacy claim.  Accordingly, the Court concludes that the Amended Complaint

fails to allege facts that establish State Farm publicized its investigation of Dr. Schatzberg's practice to a sufficient number of people so as to constitute publicity for a false light invasion of privacy claim.

Second, Dr. Schatzberg alleges that State Farm deployed Mr. Goldberg in litigation for the purpose of sending a false message to the legal community that Dr. Schatzberg was engaged in wrongdoing.  In particular, Dr. Schatzberg claims State Farm, through Mr. Goldberg, communicated to "attorneys, court reporters, Judges, and assorted other individuals" involved in Martin v. Cooper (Am. Comp. ¶¶ 86-91), Graham v. Newsuan (id. ¶¶ 92-95, 224©), James v. Hub Truck Rental (id. ¶¶ 96-98), and other "minor car accident cases," that State Farm has facts or evidence to suggest fraudulent activity or other impropriety on the part of Dr. Schatzberg.

To the extent that Dr. Schatzberg alleges that State Farm's choice of Mr. Goldberg as counsel sends a false message to the legal community that Dr. Schatzberg was engaged in wrongdoing, the Court notes that Dr. Schatzberg has not alleged, in any meaningful way, that State Farm publicized its choice of counsel in a manner that would establish the first element of a false light invasion of privacy claim.  Nor is State Farm's choice of counsel in one or more lawsuits – which are matters of public record – a private fact.  See Strickland, 700 A.2d at 987 (noting that lawsuits are matters of public record and are not private facts).  Regardless, retaining defense counsel is an integral part of a lawsuit, and a party's choice of counsel is entitled to respect.[4]  Thus, the simple fact of State Farm's choice of counsel cannot serve as grounds for a false light invasion of privacy claim.

---

[4]That is not to say, however, that a party's choice of counsel cannot be a *factor* in determining whether a particular communication is capable of defamatory meaning.

To the extent that Dr. Schatzberg's claim is based on Mr. Goldberg's conduct or statements in prosecuting the particular lawsuits raised in the Complaint, the Court concludes that such statements are protected by absolute judicial privilege. "It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991); see also Binder v. Triangle Publ'n, Inc., 275 A.2d 53, 56 (Pa. 1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."). Pennsylvania affords this privilege so that "[a]ll persons involved in a judicial proceeding are encouraged . . . to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action." Smith v. Griffiths, 476 A.2d 22, 24 (Pa. Super. Ct. 1984); accord Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 311 (3d Cir. 2003).

For this privilege to apply, the relevant communication must have been: "(1) issued as a matter of regular course of the proceedings; [and] (2) pertinent and material to the proceedings." Bochetto v. Gibson, 860 A.2d 67, 73 (Pa. 2004). These two factors apply equally to communications made prior to the initiation of judicial proceedings, in which case "the protected communication would need to have been pertinent and material and would need to have been issued in the regular course of *preparing for* contemplated proceedings." Post, 507 A.2d at 356 (emphasis added). "[T]he existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be

destroyed by abuse." Richmond v. McHale, 35 A.3d 779, 784-85 (Pa. Super. Ct. 2012) (citing Greenberg v. Aetna Ins. Co., 427 Pa. 511, 235 A.2d 576 (1967)).

Addressing first the allegations related to the Graham v. Newsuan and James v. Hub Truck Rental cases, the Court notes that Dr. Schatzberg fails to allege any specific communications or misconduct that portray him in a false light. Rather, Dr. Schatzberg relies exclusively on the claim that the retention of Mr. Goldberg as counsel for State Farm sends a message to the legal community that he is being investigated for fraud. Am. Compl. ¶¶ 92-98. As discussed above, this allegation is insufficient to establish a false light invasion of privacy claim.

In the Martin v. Cooper case, the only conduct or statement that Dr. Schatzberg alleges as a predicate for his false light invasion of privacy claim relates to Mr. Goldberg taking the deposition of Dr. Schatzberg's billing clerk, Mr. Charles Calvin, and demanding that the chiropractor who treated Mr. Martin appear to testify at trial rather than via videotape. Id. ¶¶ 86-91. Both of these actions are privileged as part of a pending lawsuit. Taking a deposition and demanding that a witness appear for testimony are both matters that are part of the regular course of proceedings and classic examples of the exercise of professional judgment by counsel. Although Dr. Schatzberg alleges that the questioning at the deposition was not pertinent or material to the pending lawsuit because it related in large part to the billing practices of Dr. Schatzberg, "all doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality." Pawlowski, 588 A.2d at 41. Moreover, the Courts have other internal sanctions to guard against defamatory statements in the course of proceedings. Binder, 275 A.2d at 56.

19

Although the Court must accept as true all reasonable inferences that may be drawn from the allegations of the Amended Complaint, and view those facts and inferences in the light most favorable to the non-moving party, <u>Rocks</u>, 868 F.2d at 645, the Court need not accept as true "unsupported conclusions and unwarranted inferences." <u>Doug Grant, Inc.</u>, 232 F.3d at 183-84 (citation omitted). Accordingly, the Court grants State Farm's motion as it pertains to Dr. Schatzberg's false light invasion of privacy claim.

### C.    RICO

Dr. Schatzberg and Philadelphia Pain Management contend in Count V of the Amended Complaint that State Farm violated civil RICO. To establish a claim for civil RICO under 18 U.S.C. § 1962©, a plaintiff must plead four basic elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. <u>Lum v. Bank of America</u>, 361 F.3d 217, 223 (3d Cir. 2004), <u>abrogated on other grounds by, Twombly</u>, 550 U.S. at 557.[5] State Farm contends that Dr. Schatzberg and Philadelphia Pain Management failed to allege the existence of a RICO enterprise, or a pattern of racketeering activity. Because the Court finds that the Plaintiffs fail to allege that State Farm engaged in a pattern of racketeering activity, the Court grants State Farm's motion to dismiss this claim.[6]

---

[5] The RICO statute provides that: "[i]t shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[6] "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." <u>See</u> <u>Kolar</u>, 361 F. App'x at 366 (quoting <u>Lightening Lube v. Witco Corp.</u>, 4 F.3d 1153, 1191 (3d Cir. 1993). Because the Court dismisses Dr. Schatzberg's underlying RICO claim, his RICO conspiracy claim must be dismissed as well. Therefore, the Court grants State Farm's motion to dismiss

To establish a pattern of racketeering activity, a plaintiff must allege the commission of "at least two acts of racketeering activity" or "predicate acts," as set forth in 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(5); H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237-239 (1989); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 363 (3d Cir. 2010).  Among the predicate acts catalogued in the statute are mail fraud and wire fraud, the predicate acts Dr. Schatzberg alleges here.  See 18 U.S.C. § 1961(1).  "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." [7]  Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002); see also Silverstein v.

---

Count VI of the Amended Complaint.

[7] To satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), a complaint may either describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or may use "some [other] means of injecting precision and some measure of substantiation into their allegations of fraud."  Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002); see also Rolo v. City Investing Company Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998), abrogation on other grounds recognized, Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000) (complaint alleging mail fraud was deficient where it failed to describe when, by whom and to whom mailing was sent and precise content of each particular mailing was not detailed); Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786 (3d Cir. 1984).  At the very least, "plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  Lum, 361 F.3d at 224.  A claim satisfies the requirements of Rule 9(b) if it adequately delineates the acts and transactions constituting fraud to apprise defendants fairly of the claim, and if its allegations are sufficiently clear to enable defendants to answer.  Jairett v. Montauk First. Sec. Corp., 203 F.R.D. 181, 186 (E.D. Pa. 2001).  This heightened pleading standard of 9(b) not only gives defendants notice of the claims against them, but also it combats "frivolous suits brought solely to extract settlements" from defendants and "provides an increased measure of protection for their reputations."  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3d Cir. 1997).

While the purpose of Rule 9(b) is to provide notice of the precise misconduct, courts "should apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by defendants."  Rolo, 155 F.3d at 658.  For example, where factual information remains within the defendant's control, the particularity rule is somewhat relaxed.  In

Percudani, 207 F. App'x 238, 239-40 (3d Cir. 2006); Franks v. Food Ingredients Int'l, Inc., No. 09-3649, 2010 WL 3046416, at *4 (E.D. Pa. July 30, 2010).

To state a claim for mail fraud under 18 U.S.C. § 1341, or wire fraud under 18 U.S.C. § 1343, the Plaintiffs must allege (1) a scheme or artifice to defraud, (2) participation by the defendants with specific intent to defraud, and (3) use of the mails or wires in furtherance of the scheme. United States v. Carey, 337 F. App'x 256, 263 n.9 (3d Cir. 2009) (citing United States v. Copple, 24 F.3d 535, 544 (3d Cir. 1994)). "[A] scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)). Although "'[t]he scheme need not involve affirmative misrepresentation, . . . the statutory term 'defraud' usually signifies 'the deprivation of something of value by trick, deceit, chicane or overreaching.'" Kehr Packages, 926 F.2d at 1415 (citation omitted).

Dr. Schatzberg alleges that the purported enterprise's scheme to defraud here consisted of State Farm paying to Rehabilitation Planning and Dr. McBride money in exchange for "hundreds (if not thousands)" of sham peer review reports since the year 2000 in order to pay less than is

re Burlington, 114 F.3d at 1418. "Relaxation," however, does not translate into boilerplate and conclusory allegations, and plaintiffs "must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." Id. Allegations "based upon information and belief" are permissible, "but only if the pleading sets forth specific facts upon which the belief is reasonably based." Hollander v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 10-0836, 2010 WL 4159265, at *4 (E.D. Pa. Oct. 21, 2010); see also Carpenters Health & Welfare Fund of Phila. v. Kia Enterprises, Inc., No. 09-116, 2009 WL 2152276, at *3 (E.D. Pa. July 15, 2009).

legally owed on treatment provided by Plaintiffs to State Farm insureds. See Am. Compl. ¶¶ 11, 131-164. The reports are said to be "shams" because Rehabilitation Planning and Dr. McBride allegedly had a financial incentive to and did (1) create biased reports in favor of State Farm, (2) identify treatment not legally subject to review as reasonable and necessary in order to create the false impression of objectivity and compliance with the MVFRL, and (3) ignore medical records from doctors that have reached conflicting findings to a conclusion in favor of State Farm.[8]

In support of these allegations, Dr. Schatzberg identifies nine uses of the mail or wires in furtherance of only a single abuse of the peer review process – the case of patient James Nelson.[9]

---

[8] As with the defamation claim, in both their briefs and at oral argument, the Plaintiffs reiterated that their RICO allegations are limited to the conduct of State Farm together with Rehabilitation Planning and Dr. McBride. Tr. at 27 (noting that the Court "should not look at or consider [the plaintiffs'] references in the [Amended] Complaint to Mr. Goldberg" for the purposes of their RICO counts). Accordingly, the Court will consider only those allegations relating to State Farm, Rehabilitation Planning, and Dr. McBride for the purposes of the Plaintiffs' RICO claims.

[9] With respect to Mr. Nelson's claim, Dr. Schatzberg alleges that his medical practice provided treatment to Mr. Nelson between February 7, 2008 and January 15, 2009 following an October 2007 motor vehicle accident, and in May 2008, he submitted invoices to State Farm for payment. In August 2008, State Farm contracted Rehabilitation Planning and Dr. McBride to conduct a peer review of these treatments. Id. ¶¶ 166-171, 178. Approximately one month after Rehabilitation Planning and Dr. McBride received Mr. Nelson's records from Dr. Schatzberg's practice, Dr. McBride issued her report. Id. ¶¶ 187-189. The report found that the treatment provided between February 7, 2008 and April 5, 2008 was medically necessary, but the remainder of the treatment was not reasonable or necessary. Id. ¶¶ 192, 198. However, Dr. Schatzberg alleges that the period between February 7, 2008 and April 5, 2008 was not legally reviewable, and that the report omits discussion of treatment Mr. Nelson received that allegedly conflicted with the conclusion Dr. McBride drew in the report. Id. ¶¶ 193, 196. Therefore, Dr. Schatzberg alleges Dr. McBride's report is a sham and just "one example" of State Farm's scheme to defraud.

Id. ¶ 248.   The wires and mailings alleged in paragraph 248(a)-(j),[10] are described as follows in the Amended Complaint:

> (a)   8/27/08 letter mailed to Rehabilitation Planning by State Farm seeking a peer review of the treatment provided to James Nelson;
>
> (b)   8/27/08 letter mailed to Plaintiffs from State Farm relating decision to seek peer review of the treatment of James Nelson;
>
> ©   9/2/08 letter mailed to Plaintiffs from Rehabilitation Planning requesting records of treatment for James Nelson;
>
> (e)   10/6/08 telephone call from Dr. McBride to Plaintiffs;
>
> (f)   10/8/08 telephone call from Dr. McBride to Plaintiffs;
>
> (g)   10/10/08 telephone call from Dr. McBride to Plaintiffs;
>
> (h)   10/15/08 telephone call from Dr. McBride to Plaintiffs;
>
> (I)   10/15/08 letter mailed to State Farm from Rehabilitation Planning enclosing the fraudulent peer review of Dr. McBride concerning the treatment of James Nelson;
>
> (j)   10/15/08 letter mailed from State Farm to Plaintiffs enclosing the alleged peer review report of Dr. McBride concerning the treatment of James Nelson.

Id. ¶ 248.

Even if the Court were to assume that State Farm's alleged plan was to avoid paying benefits as part of a scheme to defraud under the mail fraud statute, and that the nine mailings and wires were sent in furtherance of that scheme, the Court concludes that Dr. Schatzberg has

---

[10] The Plaintiffs omitted a paragraph 248(d) from the Amended Complaint.

not alleged a pattern of racketeering activity.  While two or more predicate acts are necessary to demonstrate a pattern of racketeering activity, they may not be sufficient.  See Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 n.14 (1985); 18 U.S.C. § 1961(5).  Indeed, "not every single scheme comprising two or more predicate acts will constitute a pattern."  Kehr Packages, 926 F.2d at 1412.  To demonstrate a pattern of racketeering activity, a plaintiff must show that (1) the defendants' predicate acts are related, in that they have similar "purposes, results, participants, victims, or methods of commission," and (2) the defendants' conduct is "continuous."  Zahl v. N.J. Dep't of Law and Pub. Safety, 428 F. App'x 205, 211 (3d Cir. 2011) (citing H.J. Inc., 492 U.S. at 239-40).  Here, the Plaintiffs have failed to sufficiently plead "continuity."

"Continuity" is a "centrally temporal concept" and can be demonstrated by either allegations of repeated conduct that occurred over a substantial, closed period of time, or allegations of conduct that constitutes a threat of continuing criminal action.  H.J Inc., 492 U.S. at 240-42.  To successfully allege continuity pursuant to a "closed period of time," a complaint must allege that predicate acts took place over more than just a day, or even just a week.  See id. at 242; see also Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995).  Absent such allegations of duration, a plaintiff can meet the continuity test by plausibly alleging a threat of continued criminal conduct, Tabas, 47 F.3d at 1295, or that the predicate acts of racketeering "are part of an ongoing entity's regular way of doing business."  Kehr Packages, 926 F.2d at 1412.

Courts in the Third Circuit consider a number of factors in determining RICO continuity: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."  Id. at 1412–13 (quoting Barticheck v. Fidelity Union Bank/First Nat'l State,

832 F.2d 36, 39 (3d Cir. 1987)).  As the Court of Appeals noted in <u>Kehr Packages</u>, "[t]he mailing element is not very helpful in examining the sufficiency of a RICO pattern allegation . . . .  [T]he continuity test requires us to look beyond the mailings and examine the underlying scheme or artifice.  Although the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis."  <u>See</u> <u>Kehr Packages</u>, 926 F.2d at 1414.  In other words, in the continuity analysis, the Court must focus on the deceptive activity rather than on otherwise innocent mailings.  <u>Id</u>.; <u>cf</u>. <u>H.J., Inc.</u>, 492 U.S. at 229.

Upon careful review of the allegations of the Amended Complaint, the Court concludes that the allegations of the Amended Complaint do not plausibly suggest that the defendants were involved in activity that posed a threat of continuing criminal conduct.  Although Dr. Schatzberg alleges that State Farm, Rehabilitation Planning, and Dr. McBride are involved in an ongoing scheme to defraud that began at least as early as 2000, the five letters and four wires alleged in the Amended Complaint, all occurred in a discrete seven week period rather than continuously over a longer period of time.  Dr. Schatzberg alleges no facts establishing that the racketeering activity at issue began any earlier than the summer of 2008, continued beyond October of 2008 or constituted an ongoing threat.

Likewise, the Plaintiffs have only alleged one instance of actual deceit by State Farm, the alleged attempt to avoid paying Dr. Schatzberg for treatment rendered to Mr. Nelson by obtaining a sham peer review report from Rehabilitation Planning and Dr. McBride.  Indeed, all of the predicate mailings relate only to Mr. Nelson's claim and the Amended Complaint lacks any factual allegations that plausibly suggest that State Farm's alleged fraudulent conduct with respect to Mr. Nelson's claim was its "regular way of doing business."  Where a defendant's

26

actions are "narrowly directed to a single fraudulent goal and involve a limited purpose, these actions cannot, by themselves, underpin a pattern of racketeering activity."  Rapid Circuits, Inc. v. Sun Nat'l Bank, No. 10-6401, 2011 WL 1666919, at *25 (E.D. Pa. May 3, 2011) (citing Kolar v. Preferred Real Estate Investments, Inc., 361 F. App'x 354, 365 (3d Cir. 2010).

Regardless, among the five mailings related to Mr. Nelson's claim, three of them, though in furtherance of the alleged scheme to defraud, appear to be entirely "innocent mailings" that, based on the allegations of the Amended Complaint, do not demonstrate any underlying deceit. These three mailings merely relate to the decisions to seek a peer review of Mr. Nelson's claim and to request Mr. Nelson's records in order to perform the peer review.  Likewise, the allegations related to the four telephone calls contained in paragraphs 248(e)-(h) are barren of any detail as to how they furthered or were incident to the scheme.[11]   Thus, the Plaintiffs have only identified two supposedly deceitful mailings, both of which relate to the same patient and were sent on the same day.

Because the Plaintiffs have only alleged facts that the defendants sent five letters in furtherance of its alleged scheme to defraud, in a discrete time period, related to only one purported deceitful act on the part of State Farm, Dr. Schatzberg and Philadelphia Pain

---

[11] Although not central to the Court's decision, the Court concludes that none of the four alleged instances of wire fraud were pled with the requisite particularity under Rule 9(b).  While the Court recognizes that each mailing or wire need not be fraudulent on its face, see Kehr Packages, 926 F.2d at 1415 (citing Schmuck v. United States, 489 U.S. 705, 715 (1989)), each must be in furtherance of or "incident to an essential part of the scheme, or a step in the plot."  Davis v. Abington Mem. Hosp., 817 F. Supp. 2d 556, 567 (E.D. Pa. 2011) (citation omitted).  Because Dr. Schatzberg fails to detail anywhere in the Amended Complaint how any of the alleged telephone calls furthered or were incident to the scheme, the Court concludes that the predicate acts of wire fraud were not pled with the requisite particularity under Rule 9(b).

Management have failed to allege a threat of continuing conduct.  Accordingly, the Plaintiffs fail

to state a RICO claim, and the Court dismisses Counts V and VI.

###    D.      MVFRL and Bad Faith

State Farm moves to dismiss Count III of the Amended Complaint because once the other

claims are dismissed, the amount in controversy is insufficient for the Court to retain original

jurisdiction over the claim.  Although the parties are alleged to be of diverse citizenship[12] and the

Court has not dismissed Dr. Schatzberg's defamation claim, which alleges damages in excess of

$75,000, a sufficient amount in controversy to confer diversity jurisdiction, see 28 U.S.C. § 1332,

the survival of Dr. Schatzberg's defamation claim does not necessarily provide the Court with

subject matter jurisdiction to hear the remaining two counts of the Amended Complaint.

Under 28 U.S.C. § 1367(a), the Court may exercise "supplemental jurisdiction over all

other claims that are so related to claims in the action" within the Court's original jurisdiction

"that they form part of the same case or controversy under Article III of the United States

Constitution."  28 U.S.C. § 1367; see also Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S.

546, 558-560 (2005); Wright & Miller, Federal Practice & Procedure § 3704.1 (4th ed.) ("[W]hen

there is complete diversity of citizenship and at least one named plaintiff's claim satisfies the

amount in controversy requirement of Section 1332, a district court may exercise supplemental

---

[12] Dr. Schatzberg and Philadelphia Pain Management are citizens and residents of Pennsylvania, and they "believe[] and therefore aver[]" that State Farm is a corporation with its principal place of business in Illinois.  Am. Compl. at 1.  State Farm does not dispute this allegation in any of its opposition papers.  Likewise, State Farm implicitly concedes diversity of citizenship by arguing that the Plaintiffs' state law MVFRL claim does not have the required amount in controversy to confer diversity jurisdiction, while failing to make any subject matter jurisdiction argument with respect to Dr. Schatzberg's state law defamation or false light claims, which do have the requisite amount in controversy.

jurisdiction over the jurisdictionally insufficient claims of any other plaintiff with regard to the same 'case or controversy.'").  Claims are part of the same case or controversy for the purposes of § 1367 "if they 'derive from a common nucleus of operative fact,' and 'are such that [the plaintiffs] would ordinarily be expected to try them all in one judicial proceeding . . . .'"  Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).  Courts engage in a case-by-case inquiry when determining whether federal and state claims are part of the same case or controversy.  Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995).  "Where state and federal claims are factually distinct, the claims will typically not be part of the same case or controversy."  Freedom Med. Inc. v. Gillespie, No. 06-3195, 2007 WL 2713222, at *6 (E.D. Pa. Sept. 14, 2007).

Upon careful review of the allegations contained in both Count I of the Amended Complaint related to Dr. Schatzberg's defamation claim, Count III related to Philadelphia Pain Management's MVFRL claim, and Count IV related to both Plaintiffs' bad faith claim, the Court declines to exercise supplemental jurisdiction over either Counts III or IV because the two claims are not derived from a common nucleus of operative fact with Count I.[13]  The defamation claim relates to letters and phone calls made by State Farm's Special Investigations Unit and Mr. Goldberg's law firm in an alleged attempt to smear the reputation of Dr. Schatzberg in the legal and medical communities.  The MVFRL and bad faith claims, on the other hand, relate to the actions of State Farm claims adjusters allegedly obtaining and relying upon biased peer review reports to deny payment to Dr. Schatzberg and Philadelphia Pain Management for treatment

---

[13] Together, Counts III and IV do not have an aggregate amount in controversy to confer diversity jurisdiction on the Court.

rendered.  Although the Plaintiffs allege that both of these facially distinct actions by State Farm

fell under the ACE program's ultimate purpose of trying "to eliminate Dr. Schatzberg's practice

as a source of auto claim expense," Am. Compl. ¶ 11, these are clearly different factual scenarios

that two plaintiffs would not necessarily be expected to try all in one judicial proceeding.[14]

Accordingly, the Court declines to exercise supplemental jurisdiction over Counts III and

IV of the Amended Complaint and dismisses these claims for lack of subject matter

jurisdiction.[15]

---

[14] The Court notes that had the Plaintiffs successfully alleged a RICO claim, the Court would
have retained subject matter jurisdiction over the MVFRL and bad faith claims because they both
were derived from a common nucleus of operative fact with the RICO claim.  See 28 U.S.C. §
1367(a).  However, because the Plaintiffs failed to state a RICO claim, the MVFRL and bad faith
claims must be dismissed as well.

[15] Even were the Court able to exercise jurisdiction over the Plaintiffs' bad faith claim, neither
Dr. Schatzberg nor Philadelphia Pain Management would have Article III standing to pursue the
claim because neither are insureds and the Pennsylvania Bad Faith Insurance Statute only allows
an insured – not a provider – to recover against an insurer.  42 Pa. Cons. Stat. § 8371.  Although
the Plaintiffs maintain that the insured, Mr. Nelson has assigned his rights to bring a claim under
§ 8371 to the Plaintiffs, the Plaintiffs did not plead the assignment in the Amended Complaint,
nor is the assignment incorporated by reference in the Amended Complaint.  See Fed. R. Civ. P.
10(c).  Instead, the Plaintiffs merely attached the assignment as an exhibit to their Response to
State Farm's Motion to Dismiss.  See Pl. Ex. E.  Indeed, it would have been impossible – absent
an amended pleading – for either Dr. Schatzberg or Philadelphia Pain Management to allege that
Mr. Nelson assigned the claim to them because the assignment did not occur until September 17,
2010, almost two months *after* the filing of the July 22, 2010 Amended Complaint.

While the Court is skeptical as to whether an insured can ever assign her right to sue
under Section 8371 in light of the purpose, structure, and case law interpreting it, absent well-
pled allegations that Mr. Nelson assigned his claim, the Plaintiffs lacks Article III standing to
pursue a bad faith claim against State Farm.  See Common Cause of Pa. v. Pennsylvania, 558
F.3d 249, 258 (3d Cir. 2009);see Feingold v. Liberty Mut. Grp., No. 11-5364, 2012 WL 627966,
at *2-5 (E.D. Pa. Feb. 28, 2012) (Bartle, J.) (holding that the partial assignment by an insured to
her attorney of her bad faith claim under § 8371 was void based on Pennsylvania precedent
which does not allow the assignment of unliquidated tort claims, particularly for punitive

**V.**    **CONCLUSION**

For the foregoing reasons, the Court denies State Farm's motion to dismiss with respect

to Count I, but will grant the motion to dismiss with respect to the remaining counts of the

Amended Complaint.

An appropriate order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge


---

damages); Ash v. Continental Ins. Co., 932 A.2d 877, 882 (Pa. 2007) (holding that § 8371
creates a statutory tort action and not an action in contract, and that § 8371 "only permits a
narrow class of plaintiffs to pursue the bad faith claim against a narrow class of defendants").